UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ____7/11/08____

---------------------------------------------------------x

ATRIUM GROUP DE EDICIONES Y
PUBLICACIONES, S.L., FRANCISCO ASENSIO,

Plaintiffs,

- against -                                                 08 Civ. 1569 (CM)

HARRY N. ABRAMS, INCORPORATED, JOHN
DOES 1-10

Defendants.

---------------------------------------------------------x

DECISION AND ORDER GRANTING PLAINTIFF'S
MOTIONS TO DISMISS

McMahon, J.:

I.    Introduction

This case involves a claim by Plaintiffs, publisher Atrium Group and Francisco

Asensio, that Defendant, publisher Harry N. Abrams, Inc. infringed and misappropriated

Plaintiffs' intellectual property. Plaintiffs initially filed six claims in relation to this

matter. Plaintiffs have withdrawn two claims, one for fraud on the copyright office and

the other for deceptive business practices. Before the court is the Defendants' pre-answer

motion to dismiss three of the four remaining claims: for misappropriation, unjust

enrichment and false designation of origin under the Lanham Act. Defendants do not

move to dismiss Plaintiffs' claim for copyright infringement.

For the reasons discussed below, Defendants' motion is granted as to each of the

three claims. Plaintiffs' claims for unjust enrichment and misappropriation are dismissed

with prejudice. Plaintiffs' claim for Lanham Act violations are dismissed without prejudice.

II.    Factual Allegations

The following well-plead facts are presumed true.

In early 2006, Plaintiff Atrium Group De Ediciones Y Publicaciones, S.L. (Atrium), entered into negotiations with La Martiniere Groupe (La Martiniere), the parent company of Defendant Harry N. Abrams, Incorporated (Abrams). (Compl. ¶ 11, Dkt. #1.) The negotiations between Atrium and La Martiniere concerned the distribution of several architecture and design books in various places around the world. (Id.) These negotiations also concerned a potential purchase of Atrium by La Martiniere. (Id.)

At or around the same time, Atrium entered into negotiations with Abrams "for the English language rights North America." (Id. ¶ 12). The "negotiations centered around the licensing and distribution of rights to several books," (Id.), including: "Des!ign Des!gn, New Architecture: An International Atlas," and "International Beach Houses" (known collectively as "the Works"). (Id.) Atrium exclusively owns all rights in and to the Works. (Id.)

During the time that the negotiations between La Martiniere and Atrium were taking place, Abrams obtained copies of optical disks containing the Works. (Id. ¶ 13.) By September 2006, all parties had discontinued negotiations, having reached no agreements. (Id.)

A.  Abrams Publishes and Distributes the Works throughout the United States

In or around April 2007, Atrium learned that Abrams had copied, published, and was distributing the Works throughout the United States. (Id. ¶ 14.) Atrium discovered

that the Works were available in English language copies at Barnes & Noble booksellers

in New York and on Amazon.com. (Id. ¶ 15-16; see also Ex. A.) Abrams placed its logo

on the Works and they do not bear Atrium's logo or mark anywhere on their exterior. (Id.

¶ 20.)

Upon discovery of Abrams' publication and sale of English language copies of

the Works, Atrium inquired of Abrams about the sales. (Compl. ¶ 15.) Abrams denied

any such sales. (Id.)

Atrium alleges that it did not grant any rights, title or license to Abrams, or

consent to Abrams' copying, reproduction, distribution, creation of derivative works or

sale of the Works. (Id. ¶ 18.) Atrium claims copyright infringement, unjust enrichment

and misappropriation, and false designation of origin under the Lanham Act.

III.    Discussion

        A.  Rule 12(b)(6) standard

On a motion to dismiss, the court must accept all factual allegations in the

Complaint as true. In re Xethanol Corp. Sec. Litig., 2007 WL 2572088, at *2 (S.D.N.Y.

Sept. 7, 2007) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499

(2007)). The old Conley v. Gibson standard,[1] which held that dismissal was

inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in

support of his claim which would entitle him to relief," was recently "retired" by the

United States Supreme Court in Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65

(2007). The Twombly Court held that, "While a Complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions,

---

[1] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

3

and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65

(internal citations and quotations omitted).  For a plaintiff to survive a motion to dismiss,

his "factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all the allegations in the Complaint are true (even if doubtful

in fact)." Id. at 1965 (citations omitted).[2]

With this standard in mind, I address Defendant's motion to dismiss the

remaining claims in the suit.

      B.  <u>Plaintiff's State Law Claims for Unjust Enrichment and Misappropriation
are Preempted by the Copyright Act</u>

Plaintiffs assert claims under state law for unjust enrichment and misappropriation

of intellectual property. The Federal Copyright Act preempts both claims, because they

are functionally equivalent to a claim for copyright infringement.

Section 301 of the Federal Copyright Act, 17 U.S.C. § 301, reads as follows:

> [A]ll legal or equitable rights that are equivalent to any of the
> exclusive rights within the general scope of copyright as
> specified by section 106 in works of authorship that are fixed
> in a tangible medium of expression and come within the
> subject matter of copyright as specified by sections 102 and
> 103, are governed *exclusively by* the Federal Copyright Act.

In § 301, Congress laid out a test for determining when the Copyright Act exclusively

governs a claim: 1) When the claim seeks to vindicate rights that are equivalent to one of

the exclusive rights protected by section 106 of the Copyright Act, and 2) when the work

falls within the type of works protected by sections 102 and 103 of the Copyright Act.

The first prong is known as the "general scope requirement," while the second prong is

called the "subject matter requirement." <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>,

---

[2] Plaintiff is strongly advised to note the new 12(b)(6) standard.

373 F.3d 296, 305 (2d Cir. 2004) (quoting Nat'l. Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997)).

The Second Circuit has held that the Copyright Act preempts a state law claim for unjust enrichment unless the claim has some "extra element" that renders it qualitatively different from a copyright infringement claim. In Briarpatch, supra, the plaintiff, a limited partnership dedicated to developing entertainment-related projects, sued defendant Phoenix Pictures to recover the substantial profits that Phoenix made from the movie "The Thin Red Line," which was based on the novel of the same name. Briarpatch alleged its claim under a theory of unjust enrichment. The Second Circuit concluded that the right the plaintiff sought to protect was the right to prepare or authorize the preparation of a derivative work (movie from novel). Thus, the court held that the plaintiff's unjust enrichment claim satisfied the first prong of § 301, because the Federal Copyright Act exclusively governs the right to prepare or authorize the preparation of a derivative work. Id. at 306. The Court also found that the screenplay and motion picture at issue in the unjust enrichment claim were derivative works protected under 17 USC § 103, which satisfied the second prong of section 301. Id.

In this case, as in Briarpatch, Plaintiff's claims satisfy the two-pronged test. The rights that Plaintiffs ultimately seek to vindicate through their claims for unjust enrichment and misappropriation are the rights to "reproduce . . . publish, publicly display, offer for sale and distribute the Works." (Compl. ¶ 26). Section 106 of the Federal Copyright Act governs these rights and offers redress for any harm that may result from their infringement. Under § 301, it does so exclusively.

The allegation that Plaintiffs failed to receive "any advance payment, royalties, [or] remuneration of any kind whatsoever" from Defendants (Compl. ¶ 69) does not transform their copyright infringement claim into an unjust enrichment claim. If the law were otherwise, every time copyright infringer obtained any profit from his infringing activity, the copyright owner would be able to assert a state claim for unjust enrichment. That would undermine § 301 preemption. "Courts have generally held that the unjust enrichment theory creates rights that are essentially equivalent to those created under federal copyright law." Lennon v. Seaman, 63 F. Supp. 2d 428, 435 (S.D.N.Y. 1999).

The fact that Plaintiffs developed the works "at great expense" (Compl. ¶ 42), and that Defendant "continues to willfully distribute, market, offer to sell, sell and use Plaintiff Atrium's Works" (Compl. ¶ 42), does not give rise to a state law claim for misappropriation, either. The Second Circuit has stated, "Misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by § 301." Nat'l. Basketball, supra, at 851.

Plaintiffs' unjust enrichment and misappropriation claims also satisfy the second prong of the test, the "subject matter requirement." As "literary works," the Works fall under the ambit of sections 102 and 103 of the Federal Copyright Act, which dictates that "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102, including "literary works" and "derivative works." 17 U.S.C. §§ 102, 103. As literary works that are printed (fixed in a tangible medium of expression), the Works are the sort of subject matter that are exclusively protected by the Federal Copyright Act.

Plaintiffs argue that Defendants' alleged deception "constitutes the extra element necessary to avoid preemption." (Pl.'s Opp. Mem. at 6.) They are incorrect. According to the Second Circuit, the only "extra element" that avoids preemption for a state-created cause of action is something that is "required instead of or in addition to the acts of reproduction, performance, distribution or display." Computer Assocs. Intern., Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992). Put another way, a state law claim is not preempted if the presence of an extra element changes the nature of the claim so that it is "*qualitatively* different from a copyright infringement claim." Id. at 716.

Plaintiffs do not specifically allege any "deception" by Defendants in their original complaint. However, amending the complaint to include such an allegation would be futile, because "deception" is not the sort of element that would cause claims for unjust enrichment or misappropriation to be "qualitatively different" from the Federal Copyright Act. In National Basketball the Second Circuit stated, "An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature." Nat'l. Basketball, supra, 105 F.3d at 851. This court echoed that reasoning in Katz Docherman & Epstein, Inc. v. Home Box Office:

> The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." [Plaintiff's] allegation of fraudulent intent simply alters the scope of the state action but not the equivalency of its nature to a copyright infringement claim.

Katz Docherman & Epstein, Inc. v. Home Box Office, No. 97 CIV. 7763, 1999 WL 179603, at *4 (S.D.N.Y. Mar. 31, 1999). An allegation of deception (as opposed to fraudulent intent) would be subject to similar reasoning.

7

Plaintiffs cite a case from this district, Ulloa v. Universal Music and Video Distribution Corp., No. 01 Civ. 9583, 2004 WL 840279 (S.D.N.Y. Apr. 19, 2004), to argue that their claims of unjust enrichment and misappropriation should be treated as 'belt and suspender" alternative pleadings under Rule 8(d)(2) of the Federal Rules of Civil Procedure. In Ulloa, the plaintiff, Ulloa, a singer, recorded a vocal phrase that defendant Universal later used in the final version of its song "Izzo." Plaintiff Ulloa, who did not receive compensation for her contribution, sued claiming copyright infringement and unjust enrichment. This district allowed Ulloa to plead these claims in the alternative because they arose from two distinct theories. The plaintiff in Ulloa either had a copyright interest in her work (potentially accompanied by an implied license), or she had performed unpaid labor at the behest of Universal.

In this case, however, there is only one theory – Defendants misappropriated Plaintiffs' Works, published derivative (English language) versions without permission and profited thereby. There is no alternative theory, because there is no uncompensated labor or "sweat equity" for which compensation might be owed, as there was in Ulloa. Plaintiffs' unjust enrichment claim is therefore "identical" to its copyright infringement claim. Id. at 3. Rule 8(d)(2) of the Federal Rules of Civil Procedure does not purport to override § 301 preemption.

Finally, Plaintiffs seek leave to amend the misappropriation claim. Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs are free to amend once as a matter of right before a responsive pleading has been served. However, Plaintiffs have not proffered an amended pleading or suggested any way in which the misappropriation

8

claim can be repleaded to avoid § 301 preemption. Therefore, there is no reason to

dismiss the claim without prejudice. It is dismissed with prejudice

### C. Plaintiffs Have Failed to State a Claim for False Designation of Origin under the Lanham Act

Plaintiffs assert false designation of origin under the Lanham Act. 15 U.S.C. §

1125(a). Defendants' motion to dismiss this claim is granted because Plaintiffs' Lanham

Act claim is no more than a claim of copyright infringement dressed up in the guise of

the Lanham Act. Section 1125(a) of the Lanham Act provides:

> (a) Civil action: (1) Any person who, on or in connection with
> any goods or services, or any container for goods, uses in
> commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which-- (A) is likely to cause confusion,
> or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person,
> or as to the origin, sponsorship, or approval of his or her goods,
> services, or commercial activities by another person, or (B) in
> commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or
> another person's goods, services, or commercial activities, shall
> be liable in a civil action by any person who believes that he or
> she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). It protects against false designation of the origin of goods or service.

In Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), the

Supreme Court defined the concept of "the origin of goods" for Lanham Act purposes,

stating that the phrase "refers to the producer of the tangible goods that are offered for

sale, and not to the author of any idea, concept, or communication embodied in those

goods." Dastar, 539 U.S. 23 at 37. In other words, the "origin" of goods is the

manufacturer of the goods, the publisher of a book, as opposed to its author. For

copyright purposes... on the other hand, "originator" refers to the author/owner of the

copyright - or, as <u>Dastar</u> puts it, "The person or entity that originated the ideas or communications that "goods" embody or contain." <u>Id.</u> at 32. Thus, in <u>Dastar</u>, the Supreme Court dismissed a Lanham Act claim for false designation of origin because defendant Dastar had in fact produced and distributed the tangible goods in question – a set of videos entitled, "World War 11 Campaigns in Europe." Dastar produced "Campaigns" by obtaining beta cam tapes of a television series in the public domain ("Crusade in Europe"), copying the tapes, substituting certain content (including the opening sequence, credit page, and final closing), and selling the resulting work under the "Campaigns" title. Dastar designated itself as the party that manufactured and sold the "Campaigns" video set "as its own product." <u>Id.</u> at 27. The Plaintiff, Fox, who had held the copyright to the "Crusade" series before it expired, brought a claim against Dastar for false designation of origin. Fox's claim (an obvious ploy to get around the expiration of its copyright) was dismissed. The Supreme Court found that "the most natural understanding of the 'origin' of the 'goods' – the source of wares – is the producer of the tangible product sold in the marketplace, in this case the physical Campaigns videotape sold by Dastar." <u>Id.</u> at 31. "For merely saying it is the producer of the ["Campaigns"] video [which it was] . . . no Lanham Act liability attaches to Dastar." <u>Id.</u> at 37.

In this case, Defendants, like Dastar Corp., acquired a copy of an optical disk containing "the Works," which Plaintiffs had produced. Defendants then published books alleged to be "practically identical to the Works in that they contain the exact photographs, layout, design and creative content" as do the Works. (Compl. ¶ 30.) As in <u>Dastar</u>, Abrams designated itself as the originator of the books that it sold. (Compl. ¶ 11).

10

Thus, Abrams is indisputably the producer of the tangible goods in question ("the Works"), while Atrium owns the copyright for the content of the Works. Under the Dastar rule, a consumer who purchases a copy of "New Architecture: An International Atlas" and sees that Abrams published the book is not falsely informed about the origin of the book because Abrams did in fact produce the book. Plaintiffs have a claim for copyright infringement. A claim for false designation of origin, however, does not lie on the facts as alleged.[3]

Plaintiffs argue that Dastar should be limited to cases in which the underlying material at issue is in the public domain. But the Supreme Court did not articulate any distinction between copyrighted and uncopyrighted material. Rather, the Court was clearly concerned that applying Lanham Act protection to otherwise unprotected material would result in an extension of copyright law through the back door of the Lanham Act. According to the Court, providing Lanham Act protection to uncopyrighted material would effectively create "a species of mutant copyright law that [would limit] the public's "federal right to 'copy and to use'" expired copyrights." Dastar, 539 U.S. at 34. The Court also stated that the "creative talent of the sort that lay behind the Campaigns videos is not left without protection," because Fox could have renewed its copyright in the "Crusade" television series and would have then had a straightforward copyright infringement claim against Dastar. Id. at 37. Clearly, under the facts of Dastar, the Supreme Court would have declined to extend Lanham Act protection to the "Crusade," whether it was under copyright or not.

---

[3] Contrary to Plaintiffs' at best, lazy and at worst, fraudulent assertion that "there is not a single case citing Dastar's reasoning in this district," (Pl.'s Opp. Mem. at 7), a number of courts in the Southern District have applied Dastar's reasoning. See, e.g. Flaherty v. Filardi, No. 03 Civ. 2167, 2007 WL 2734633 (S.D.N.Y. Sept. 19, 2007); Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579 (S.D.N.Y. 2007); Smith v. New Line Cinema, No. 03 Civ. 5274, 2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004).

A number of courts have recognized that Dastar's rule applies to copyrighted material. For example, in Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007), the court found no false designation of origin where the plaintiff, the compiler of a poetry collection sued the defendant, the publisher of a similar collection, for both copyright infringement and false designation of origin. In Silverstein the court rejected the defendant publisher's attempt to distinguish Dastar on the ground that it involved material that was out of copyright, stating "Dastar's holding does not seem to turn on the copyright status of the reproduced material. Indeed, the Supreme Court implied that the copyright laws would supply the sole protection when an authors ideas are reverse passed off." Silverstein, 522 F. Supp. 2d at 601 (internal citation omitted). In Universal Sys., Inc. v. Lee, 379 F.3d 131 (5th Cir. 2004), the Fifth Circuit applied Dastar to a Lanham Act claim involving a copyrighted work and in A Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 392 F.Supp. 2d 297 (D. Conn. 2005), the Connecticut District Court stated that "Dastar progeny have expressly rejected plaintiff's copyright/no copyright distinction and applied Dastar to claims concerning copyrighted works." Id. at 313. Likewise in Williams v. UMG Recordings, Inc., the Central District Court of California stated that, in Dastar, "the Supreme Court's holding did not depend on whether the works were copyrighted or not" and that, "the Court's holding is in no way limited to uncopyrighted material." Williams v. UMG Recordings, Inc., 281 F.Supp. 2d 1177, 1185 (C.D. Cal. 2003).

Plaintiffs cite Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836 (S.D.N.Y. 2000) and Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775 (2d Cir. 1994) to support their argument that the Lanham Act applies differently to copyrighted materials than it does to

12

uncopyrighted materials. But as plaintiffs concede, these cases are pre-<u>Dastar</u> and are therefore no longer good law.[4]

Plaintiffs seek leave to amend their Lanham act claim. No answer having been served, plaintiffs may serve an amended complaint. Fed. R. Civ. P. 15(a). However, Plaintiffs many not avail themselves of their "of right" amendment to replead the claim that the court has just dismissed without running afoul of Rule 11 of the Federal Rules of Civil Procedure.

Plaintiffs suggest that they have an alternative Lanham Act theory, involving infringement of a "series title." Plaintiffs have alleged that the Works are serial works. Under this theory, "Des!gn Des!gn" would be the series designator (ala "The Hardy Boys"), while "Furniture and Lamps" would identify a particular work within the series (ala "The Secret of the Caves"). Because trademark protection is accorded to "the title of a series of books," McCarthy on Trademarks and Unfair Competition, at 10:6 (2007), plaintiffs are free to use their "of right" amendment to assert this new theory of Lanham Act liability if they can do so consistent with counsel's obligations under Fed. R. Civ. P. 11.

Accordingly, Defendants' motion to dismiss Plaintiffs' claim of false designation of origin under the Lanham Act is granted without prejudice. Plaintiffs must serve their proposed amendment by July 25.

IV. Conclusion

---

[4] The applicability of these cases is also questionable but the court need not address that as <u>Dastar</u> lays out the standard applicable to Plaintiff's Lanham Act claim.

Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment is granted with prejudice. Defendants' motion to dismiss Plaintiffs' claims for misappropriation and false designation of origin under the Lanham Act are dismissed without prejudice.

This constitutes the decision and order of the court.

Dated: July 11, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL